IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RANYELL SEVERINO-MOTA, | : Civil No. 3:22-cv-2030 |
| Plaintiff | : (Judge Mariani) |
| v. | : |
| ALEXA LIDWELL, DR. MALHI, DEBRA CUTSHALL, JAMEY LUTHER, JOHN AND JANE DOE, | : |
| Defendants | : |

FILED
SCRANTON
JAN 0 5 2024
PER _____ DEPUTY CLERK

## MEMORANDUM

Plaintiff Ranyell Severino-Mota ("Plaintiff"), an inmate in the custody of the Pennsylvania Department of Corrections ("DOC"), initiated this civil rights action pursuant to 42 U.S.C. § 1983 setting forth allegations regarding medical treatment at the State Correctional institution at Smithfield ("SCI-Smithfield") and the State Correctional Institution at Huntingdon ("SCI-Huntingdon"). (Doc. 1). The matter is proceeding via an amended complaint. (Doc. 26). Named as Defendants are SCI-Smithfield Corrections Health Care Administrator Alexa Lidwell, and former SCI-Smithfield Superintendent Jamey Luther (together, the "DOC Defendants"), SCI-Smithfield Health Services Administrator Debra Cutshall, and SCI-Huntingdon Dr. Rajinder Malhi (together, the "Medical Defendants"), and John and Jane Doe. Presently before the Court are Defendants' Rule 12(b) motions (Docs. 27, 37, 38) to dismiss. Plaintiff failed to respond to the motions and the time for responding

has now passed.[1] Therefore, the motions are deemed unopposed and ripe for resolution. For the reasons set forth below, the Court will grant the motions. The Court will also dismiss the action against the John and Jane Doe Defendants pursuant to Federal Rule of Civil Procedure 4(m).

## I.  Allegations of the Amended Complaint

Plaintiff was housed at SCI-Smithfield from 2016 to 2020. (Doc. 26). He was transferred to SCI-Huntingdon in 2020. (*Id.* ¶ 22).

In 2016, Plaintiff developed a sinus infection while in the Restricted Housing Unit at SCI-Smithfield. (*Id.* ¶ 9). Medical staff treated Plaintiff and prescribed nasal spray and pain pills. (*Id.* ¶ 10). Plaintiff alleges that his condition worsened, and he requested a consultation with an outside specialist. (*Id.* ¶ 11). The request was denied, and Plaintiff was prescribed antibiotics. (*Id.* ¶ 12)

In 2019, the medical department took a sample from Plaintiff's nasal passages for testing. (*Id.* ¶ 14). On September 12, 2019, Plaintiff inquired about the test results. (*Id.*; Ex. A). In response, Defendant Cutshall informed Plaintiff that the results were not yet available and advised him to sign up for sick call if he continued to have issues. (*Id.* ¶ 15; Ex. A).

---

[1]  Plaintiff was directed to file briefs in opposition to Defendants' motions and was admonished that failure to file opposition briefs would result in Defendants' motions being deemed unopposed. (Doc. 42) (citing M.D. PA. LOCAL RULE OF COURT 7.6).

2

On December 8, 2019, Plaintiff submitted a request slip inquiring about the test results. (*Id.* ¶ 16; Ex. B). On December 11, 2019, Defendant Lidwell informed Plaintiff that the test was normal and advised him to sign up for sick call if he continued to have sinus issues. (*Id.* ¶ 17; Ex. B).

On July 19, 2020, Plaintiff wrote a request slip to Defendant Luther, wherein he stated that he had been suffering from a sinus infection since 2016 and had been waiting to see a specialist for four months. (*Id.* ¶ 19; Ex. C). The following day, Defendant Luther responded and informed Plaintiff that she was not a medical expert, and he must discuss the issue with Defendant Lidwell. (*Id.* ¶ 20; Ex. C). On July 21, 2020, Defendant Lidwell responded to Plaintiff and advised him that he was treated with Prednisone because the medical department believed his issue was inflammatory rather than infectious, and, therefore, he was not scheduled to be treated by an outside specialist. (*Id.* ¶ 21; Ex. D). Defendant Lidwell also told Plaintiff that he would be evaluated by a doctor related to his request to see a specialist. (*Id.*).

In 2020, Plaintiff was transferred to SCI-Huntingdon and immediately put in a sick call request concerning his sinus condition. (*Id.* ¶¶ 22-23). In response, Defendant Dr. Mahli prescribed Tylenol with codeine. (*Id.* ¶ 24).

In 2021, Plaintiff was referred an outside hospital and underwent sinus surgery. (*Id.* ¶ 25). He alleges that the surgery did not improve his condition and that he continues to suffer from bleeding and breathing issues. (*Id.* ¶ 27).

3

On June 7, 2021, Plaintiff submitted grievance number 930856, wherein he complained about the treatment he received for his sinuses. (Doc. 26, Ex. E). The grievance was denied, and it was noted that Plaintiff was treated by an Ear, Nose, and Throat ("ENT") specialist on two occasions and that another appointment was scheduled. (*Id.*). The ENT performed a procedure and recommended saline rinses and ibuprofen for pain. (*Id.*). Both recommendations were followed by the prison medical staff. (*Id.*). Additionally, Dr. Malhi ordered Tylenol with codeine for breakthrough pain. (*Id.*). The grievance response also noted that all of Plaintiff's sick call slips were answered in a timely manner, and all concerns were appropriately addressed. (*Id.*).

For relief, Plaintiff seeks compensatory and punitive damages. (*Id.* at p. 6).

Defendants move to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docs. 27, 37, 38).

## II. **Legal Standard**

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks

omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

## III.   The DOC Defendants' Rule 12(b) Motions

### A.   Allegations against Defendants Lidwell and Luther

In order to state an actionable civil rights claim, a plaintiff must plead two essential elements: (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Groman v. Township of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995); *Shaw by Strain v. Strackhouse*, 920 F.2d 1135, 1141-42 (3d Cir. 1990). Individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of respondeat superior." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)).

"A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207-08; *see also Rizzo v. Goode*, 423 U.S. 362 (1976); *Atkinson v. Taylor*, 316 F.3d 257 (3d Cir. 2003). Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible. *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at 1207-08. Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. *Rode*, 845 F.2d at 1208.

A review of the complaint confirms that the only allegations against Defendants Lidwell and Luther pertain to their responses to inmate requests slips. (*See* Doc. 26). Plaintiff's attempt to hold Defendants Lidwell and Luther liable based on their responses to his inmate request slips must fail. Courts have routinely held that the "failure of a prison official to provide a favorable response to an inmate grievance is not a federal constitutional violation." *Flanagan v. Shively*, 783 F. Supp. 922, 931-32 (M.D. Pa. 1992), *aff'd*, 980 F.2d 722 (3d Cir. 1992). Likewise, the response to an inmate request slip is insufficient to show personal involvement. *See, e.g., Rieco v. Moran*, 633 F. App'x 76, 80 (3d Cir. 2015) (response to inmate request slip does not suffice to show personal involvement). Defendants' responses to Plaintiff's inmate request slips does not support a claim for deliberate indifference regarding medical care because it does not constitute personal

involvement in the conduct upon which the claim is based. *See, e.g., Fantone v. Herbik*, 528 F. App'x 123 (3d Cir. 2013) (holding that a prison administrator's denial of an inmate's grievance with respect to his medical care does not amount to deliberate indifference to his serious medical needs where there is no evidence that the administrator "had a reason to believe that the prison doctors were either mistreating or not treating [plaintiff], or that they inappropriately handled his grievances").

Additionally, a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was the prison warden, or a prison supervisor, when the incidents set forth in the complaint occurred. *See Rode*, 845 F.2d at 1207. Any attempt by Plaintiff to hold Defendant Luther liable for the actions of her subordinates is essentially an assertion of respondeat superior liability which seeks to hold her liable based on her supervisory role as Superintendent. This ground of constitutional liability has been squarely rejected by the courts. *See Rode*, 845 F.2d at 1207.

The Court finds that Plaintiff failed to state a claim upon which relief can be granted against Defendants Lidwell and Luther. The DOC Defendants' motion to dismiss will be granted on this ground.

### B.     Eighth Amendment Claim

In order to establish an Eighth Amendment medical claim, a plaintiff "must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden Cnty. Correctional Facility*, 318 F.3d 575, 582

8

(3d Cir. 2003) (citing *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." *Id.* (citation omitted).

A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment. *See Farmer v. Carlson*, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988); *see also McCracken v. Jones*, 562 F.2d 22, 24 (10th Cir. 1977); *Smart v. Villar*, 547 F.2d 112, 113 (10th Cir. 1976), *cert. denied*, 450 U.S. 1041 (1981). Moreover, "[i]f a prisoner is under the care of medical experts...a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). Accordingly, "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating)

9

a prisoner, a non-medical prison official...will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Id.*

Assuming that Plaintiff's allegations qualify as a serious medical condition for purposes of the Eighth Amendment analysis, the Court must determine whether he has established a deliberate indifference to that need. In the amended complaint, Plaintiff alleges that the prescribed treatment methods were ineffective and there was a delay in the referral to an outside specialist. Plaintiff's belief that he should have received different treatment and should have been transported to an outside specialist constitutes a "mere disagreement as to the proper medical treatment," and is not an actionable Eighth Amendment claim. *Monmouth Cnty. Corr. Institutional Inmates*, 834 F.2d at 346. Given the considerable latitude afforded prison authorities in the treatment of prisoners, a prison doctor's decision to prescribe a certain medication and order a certain procedure simply cannot give rise to an Eighth Amendment claim. *See White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990) (doctor's choice of one drug over another is not actionable); *Spruill*, 372 F.3d at 235 (holding that "mere disagreement as to the proper medical treatment" is insufficient to state a constitutional violation); *Gause v. Diguglielmo*, 339 F. App'x 132 (3d Cir. 2009) (dispute over choice of medication does not rise to the level of an Eighth Amendment violation).

Additionally, Corrections Health Care Administrator Lidwell and Superintendent Luther are not medical personnel and cannot be considered deliberately indifferent "simply

because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1991). Plaintiff has not alleged that these Defendants had reason to believe that his medical providers were mistreating or failing to treat him. See *Spruill*, 372 F.3d at 236.

Plaintiff fails to allege facts from which it can reasonably be inferred that the DOC Defendants exhibited deliberate indifference to his medical needs. Therefore, the Court will dismiss the Eighth Amendment inadequate medical care claim against the DOC Defendants.

### C.   Medical Malpractice/Negligence Claims

Plaintiff also asserts state law claims of medical malpractice and negligence against Defendant Lidwell. (Doc. 26 ¶ 31). Because no federal claims remain, any potential basis for this Court to consider Plaintiff's state law claims lies solely within the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

The Court of Appeals for the Third Circuit has instructed that a district court "*must* decline to decide the pendent state claims" after the claims over which the district court has original jurisdiction have been resolved "unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Neelu Pal v. Jersey City Med. Ctr.*, 658 F. App'x 68, 75 n. 6 (3d Cir. 2016) (emphasis in original) (internal quotation marks and citations omitted).

11

As Plaintiff's medical malpractice claims are entirely grounded in state law, the Court will exercise its discretion and decline to exercise supplemental jurisdiction over those claims. *Id.* at 68; *see also* 28 U.S.C. § 1367(c)(3) (permitting a district court to decline to exercise supplemental jurisdiction where it has "dismissed all claims over which it has original jurisdiction").

## IV.  The Medical Defendants' Rule 12(b) Motion

### A.  Eighth Amendment Claim

In the context of prison medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." *Rouse*, 182 F.3d at 197). Prison officials violate the Eighth Amendment "when they are deliberately indifferent to an inmate's serious medical need." *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "[T]he concept of a serious medical need, as developed in *Estelle*, has two components, one relating to the consequences of a failure to treat and one relating to the obviousness of those consequences." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991). The "condition must be such that a failure to treat can be expected to lead to substantial and unnecessary suffering, injury, or death[,]" and "the condition must be one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Id.* (citation and internal quotation marks omitted).

The concept of "deliberate indifference" requires that the prison official actually knew of and disregarded "an excessive risk to inmate health or safety[.]" *Farmer*, 511 U.S. at 837). The United States Court of Appeals for the Third Circuit has found deliberate indifference when a "prison official: (1) knows of a prisoner's need for medical treatment and intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse*, 182 F.3d at 197 (citation omitted).

The Court concludes that, even if it were assumed that the amended complaint has alleged a serious medical need concerning Plaintiff's sinus issues, the Court would still find that the amended complaint has not plausibly alleged that the Medical Defendants were deliberately indifferent to that need.

There is no question that Plaintiff received some level of medical care from Dr. Mahli and the medical staff at SCI-Smithfield and SCI-Huntingdon. Plaintiff acknowledges that Dr. Mahli treated him upon arrival at SCI-Huntingdon, gave him Tylenol with codeine, sent him to an ENT specialist on two occasions, and referred him for a third visit, and approved the sinus surgery. The ENT performed a sinus procedure, ordered saline rinses and ibuprofen, and Dr. Mahli again ordered Tylenol with codeine. "Where the plaintiff has received some care, inadequacy or impropriety of the care that was given will not support an Eighth Amendment claim." *Norris v. Frame*, 585 F.2d 1183, 1186 (3d Cir. 1978). Such is the case here.

To the extent that Plaintiff complains that the medications and procedures were not effective or were not the interventions that he preferred, it is well-settled that an inmate's objection to the type of medications and procedures ordered by prison physicians is precisely the type of "disagreement between an inmate and doctors over alternate treatment plans" that falls well short of a constitutional violation. *Tillery v. Noel*, 2018 WL 3521212, at *5 (M.D. Pa. June 28, 2018). Indeed, these types of claims frequently arise, and are routinely rejected, in the prison setting. *See, e.g., Whooten v. Bussanich*, 248 F. App'x 324, 326-27 (3d Cir. 2007) (medical staff was not deliberately indifferent for treating migraine headaches with a medication other than the drug preferred by plaintiff); *Ascenzi v. Diaz*, 247 Fed. Appx. 390, 391 (3d Cir. 2007) (no deliberate indifference where plaintiff was provided pain medication and antibiotics instead of narcotic pain relievers for his herniated cervical discs). While Plaintiff is clearly frustrated by the perceived ineffectiveness of the treatments that he was offered, there is nothing to suggest that the Medical Defendants were deliberately indifferent to his medical needs. Based on the allegations of the amended complaint, the Medical Defendants did not exhibit a wanton disregard of Plaintiff's medical needs, did not fail to provide any medical treatment, and did not deny any requests for medication.[2] Plaintiff simply disagrees with the Medical Defendants' medical judgment and prescription of certain medication.

---

[2] Plaintiff does not allege that he failed to receive any medication. (*See* Doc. 26).

14

Additionally, Defendant Cutshall is the Health Services Administrator at SCI-Smithfield, she is not a medical provider treating patients and does not have a medical degree. (*See* Doc. 40-2; *see also Thomas v. Dragovich*, 142 F. App'x 33, 39 (3d Cir. 2005) (noting that Health Care Administrators, such as Defendant Cutshall, "are undisputably administrators, not doctors")). The amended complaint confirms that Plaintiff was under the care of medical personnel. Because Defendant Cutshall is not a physician, physician assistant, or certified registered nurse practitioner, she cannot be considered deliberately indifferent "simply because [she] failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Durmer*, 991 F.2d at 69.

Plaintiff fails to allege facts from which it can reasonably be inferred that the Medical Defendants exhibited deliberate indifference to his medical needs. Therefore, the Court will dismiss the Eighth Amendment inadequate medical care claim against these Defendants.

### B.     Supervisory Claims against Defendant Mahli

As stated, under § 1983, individual liability may be imposed only if the state actor played an "affirmative part" in the alleged misconduct. *Evancho*, 423 F.3d at 353 (quoting *Rode*, 845 F.2d at 1207). Liability "cannot be predicated solely on the operation of respondeat superior." *Id.* In other words, defendants "must have personal involvement in the alleged wrongs…shown through allegations of personal direction or of actual knowledge and acquiescence." *Atkinson*, 316 F.3d at 271; *Rode*, 845 F.2d at 120-08.

Supervisors "may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Iqbal*, 556 U.S. at 676. Supervisory liability will attach when the supervisor: (1) establishes and maintains a policy causing constitutional harm, or (2) participates in the violation of rights, directs others to violate them, or as person in charge, knows of and acquiesces in the subordinates' violation. *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010). A supervisory liability claim "necessarily includes as an element an actual violation at the hands of subordinates or employees." *Id.* at 130.

Defendants argue that Dr. Mahli cannot be held liable for the actions of Defendant Cutshall, or any other medical provider. (Doc. 40, pp. 11-12). As noted above, a plaintiff may establish supervisory liability if he demonstrates that a supervisor established and maintained a policy, practice, or custom that directly caused the constitutional harm. *Santiago*, 629 F.3d at 129 n.5. Plaintiff, however, has not demonstrated that Defendant Mahli knew of any unreasonable risk and was indifferent to that risk by failing to implement such a policy. *See Merring v. City of Carbondale, Pa.*, 558 F. Supp. 2d 540, 547 (M.D. Pa. 2008). Indeed, the amended complaint does not allege that any Defendant failed to adhere to any policies. To the extent that Plaintiff's claims rely on a respondeat superior theory of liability against Defendant Mahli, he is entitled to dismissal.

### C. Medical Malpractice/Negligence Claims

Plaintiff has also alleged state law claims of negligence and medical malpractice against the Medical Defendants. (Doc. 26 ¶ 31). Where a district court has original jurisdiction pursuant to 28 U.S.C. § 1331 over federal claims, and supplemental jurisdiction over state claims pursuant to 28 U.S.C. § 1367(a), the district court has discretion to decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). Where the federal claims are dismissed at an early stage in the litigation, courts generally decline to exercise supplemental jurisdiction over state law claims. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966); *Growth Horizons, Inc. v. Delaware Cnty., Pa.*, 983 F.2d 1277, 1284-85 (3d Cir. 1993). In this case, since the Court is dismissing every claim against the Medical Defendants over which it had original subject matter jurisdiction, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(c)(3).

## V. Federal Rule of Civil Procedure 4(m)

Rule 4(m) sets forth the following time frame a plaintiff has to serve a defendant with the summons and copy of the complaint:

> If a defendant is not served within 90 days after the complaint is filed, the court -- on motion or on its own after notice to the plaintiff -- must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

FED. R. CIV. P. 4(m). The John and Jane Doe Defendants were named in the amended complaint that was filed on or about June 16, 2023, and, to date, have not been identified or served in this case. The Court must engage in a two-step process in determining whether to dismiss the unidentified, non-served Defendants or grant Plaintiff additional time to effect service. "First, the district court should determine whether good cause exists for an extension of time. If good cause is present, the district court must extend time for service and the inquiry is ended. If, however, good cause does not exist, the court may in its discretion decide whether to dismiss the case without prejudice or extend time for service." *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1305 (3d Cir. 1995). Good cause requires good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance with the time specified in the rules. *MCI Telecomm. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097 (3d Cir. 1995). In determining whether good cause exists, a court's "primary focus is on the plaintiff's reasons for not complying with the time limit in the first place." *Id.* Although prejudice is a factor to be considered, the absence of prejudice to the opposing party alone does not constitute good cause to excuse late service. *Id.*

In the present matter, Plaintiff failed to establish good cause. On July 25, 2023, the Court ordered Plaintiff to provide additional information concerning the identity of the John and Jane Doe Defendants and warned him that failure to comply may result in the dismissal of Plaintiff's claims against these Defendants pursuant to Rule 4(m). (Doc. 30 ¶ 5). Plaintiff

failed to do so, and his *pro se* status is not good cause to excuse his failure to timely identify or serve these Defendants. *Veal v. United States*, 84 F. App'x 253, 256 (3d Cir. 2004). Based upon the lack of any explanation for his failure to adhere to the requirements of Rule 4, the Court finds that Plaintiff failed to establish good cause.

If a plaintiff cannot show good cause for his or her failure to serve the defendant within ninety days, a district court may either dismiss the defendant, or exercise its discretion to order that service be made within a specific time. *Petrucelli*, 46 F.3d at 1305; *see also* FED. R. CIV. P. 4(m). It is Plaintiff's responsibility to properly identify all defendants, and provide accurate mailing addresses for the defendants, in a timely fashion. (*See* Doc. 30 ¶¶ 4-5) (advising Plaintiff that failure to properly name a defendant, or provide an accurate mailing address for a defendant, may result in dismissal of the claims against that defendant pursuant to Federal Rule of Civil Procedure 4(m)).

In light of Plaintiff's lack of good faith effort to identify or serve the John and Jane Doe Defendants, despite this Court's warning of the possible consequences, including dismissal, the Court concludes that dismissal is appropriate under the present circumstances. Accordingly, the unidentified, non-served Defendants will be dismissed from this action.

## VI.   Leave to Amend

When a complaint fails to present a prima facie case of liability, district courts must generally grant leave to amend before dismissing the complaint. *See Grayson v. Mayview*

*State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). Specifically, the Third Circuit Court of Appeals has admonished that when a complaint is subject to dismissal for failure to state a claim, courts should liberally grant leave to amend "unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245 (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)). The above claims are factually and legally flawed; thus, the Court concludes that granting Plaintiff leave to file a second amended complaint would be futile. *See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (where an inmate plaintiff "has already had two chances to tell his story . . . giving him further leave to amend would be futile.")

## VII. Conclusion

The Court will grant Defendants' motions (Docs. 27, 37, 38) to dismiss. A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: January 5, 2024